IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| SERGIO HERNANDEZ-HERNANDEZ, <br> FRANCISCO JAVIER ROJO-HERNANDEZ, <br> BRAULIO HERNANDEZ-HERNANDEZ, <br> ALEJANDRO MATEO-HERNANDEZ, <br> FIDENCIO HERNANDEZ-HERNANDEZ and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> HENDRIX PRODUCE, INC.; RAYMON EARL HENDRIX, INDIVIDUALLY; and YESENIA MERINO, INDIVIDUALLY, <br><br> Defendants. | CV613-053 <br><br> CIVIL ACTION NO. _____ |

## COMPLAINT

### I. PRELIMINARTY STATEMENT

1. Plaintiffs and Opt-In Plaintiffs are migrant agricultural workers recruited by Defendants in Mexico in 2009, 2010, 2011 and 2012 to work for Defendants in and around Candler County, Georgia. Plaintiffs file this action on behalf of themselves and other similarly-situated workers to secure and vindicate their rights under the Fair Labor Standards Act ("FLSA") and under Georgia contract law.

2. Defendants were sued for the same violations in 2010. *Garcia-Mancha, et al., v. Hendrix Produce, Inc., et al.*, 6:10-CV-36 (S.D. Ga.). However, Defendants continue to underpay their workers in violation of the FLSA and their employment contracts, including by falsifying daily hours worked and by forcing workers to endorse and cash checks and then return the money to their supervisors.

1

3. Defendants violated the FLSA by failing to pay each Plaintiff, Opt-In Plaintiff and other similarly-situated workers at least the required average minimum hourly wage for every compensable hour of labor performed in a workweek, including by failing to reimburse their pre-employment expenses as required by law.

4. Defendants breached Plaintiffs' and Opt-In Plaintiffs' employment contracts by failing to pay the contractual minimum wage for all hours worked.

5. Plaintiffs and Opt-In Plaintiffs seek to their unpaid wages, liquidated damages, actual, incidental, consequential, and compensatory damages, and pre- and post-judgment interest.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction of this action pursuant to:

   a. 28 U.S.C. § 1331 (Federal Question);

   b. 29 U.S.C. § 1337 (Interstate Commerce);

   c. 29 U.S.C. § 216(b) (FLSA), and

   d. 28 U.S.C. § 1367 (Supplemental).

7. This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiffs' federal FLSA claims that they form part of the same case or controversy under Article III, Section 2 of the U.S. Constitution.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and S.D. Ga. Local Rule 2.1(b), because a substantial part of the claims arose in the Southern District of Georgia and because the Defendants reside there.

## III. PARTIES

9. At all times relevant to this complaint, Plaintiffs and Opt-In Plaintiffs were H-2A agricultural guestworkers admitted into the United States to work under the auspices of the H-2A

program, 8 U.S.C. § 1188 and 20 C.F.R. §§ 655.90-655.119 (2009) and 20 C.F.R. §§ 655.0 – 655.185 (2010).

10. Plaintiffs' FLSA consent forms are attached as Exhibit A.

11. At all times relevant to this action, Defendant Hendrix Produce, Inc. ("Hendrix Produce"), was and is a corporation in good standing, duly formed under and in accordance with the laws of the State of Georgia. Hendrix Produce maintains a principal place of business in Metter, Georgia.

12. Defendant Hendrix Produce may be served with process through its registered agent, Raymon Earl Hendrix, at 29098 Highway 129 South, Metter, Georgia 30439-0175.

13. Upon information and belief, Defendant Hendrix Produce held the workers' compensation insurance policy for the Plaintiffs and other similarly-situated workers.

14. Defendant Raymon Earl Hendrix ("Hendrix") is the Chief Executive Officer of Hendrix Produce and may be served with process at 29098 Highway 129 South, Metter, Georgia 30439-0175.

15. Defendant Hendrix's son, Kevin Hendrix, is the Chief Financial Officer of Defendant Hendrix Produce.

16. Defendant Hendrix's wife, Mary Hendrix, is the Corporate Secretary of Defendant Hendrix Produce.

17. Defendant Hendrix is the day-to-day manager of Hendrix Produce and establishes its business practices.

18. Defendant Hendrix and his wife Mary Hendrix personally own land used by Hendrix Produce to grow crops and to house agricultural workers.

19. Defendants Hendrix Produce and Hendrix grow, harvest, and pack produce, including Vidalia onions, for sale.

20. Defendant Yesenia Merino ("Merino") is a farm labor contractor and may be served at 234 Whitney Way, Metter, Georgia.

21. Defendants Hendrix Produce and Hendrix ("Hendrix Defendants") have hired Defendant Merino to furnish labor to plant and harvest the Hendrix Defendants' crops as part of their farming operations since 2007.

22. All allegations in this Complaint pertaining to the acts or omissions of Defendant Merino were within the scope of her authority as an agent of, and as such are attributable to, the Hendrix Defendants.

23. Defendant Hendrix Produce was an employer, as defined by the FLSA, of Plaintiffs and other similarly-situated workers, because it suffered or permitted Plaintiffs and other similarly-situated workers to work.

24. Defendant Hendrix Produce was an employer of Plaintiffs and other similarly situated workers employed under the terms of the 2009-2012 job orders attached as Exs. B-E, as defined by the H-2A regulations, 20 C.F.R. § 655.100(c) (2009) and 20 C.F.R. § 655.103(b) (2010), because it had a place of business in the U.S. and a means by which it could be contacted for employment, had the ability to supervise and control the work of Plaintiffs and other similarly-situated workers, and had a valid Federal Employer Identification Number.

25. Defendant R.E. Hendrix was an employer, as defined by the FLSA, of Plaintiffs and other similarly-situated workers, because he suffered or permitted Plaintiffs and other similarly-situated workers to work.

26. Defendant R.E. Hendrix was an employer of Plaintiffs and other similarly situated workers employed under the terms of the 2009-2012 job orders attached as Exs. B-E, as defined by the H-2A regulations, 20 C.F.R. § 655.100(c) (2009) and 20 C.F.R. § 655.103(b) (2010), because he had a place of business in the U.S. and a means by which he could be contacted for employment, had the ability to supervise and control the work of Plaintiffs and other similarly-situated workers, and had a valid Federal Employer Identification Number.

27. Defendant Merino was an employer, as defined by the FLSA, of Plaintiffs and other similarly-situated workers, because she suffered or permitted Plaintiffs and other similarly-situated workers to work.

28. Defendant Merino was an employer of Plaintiffs and other similarly situated workers employed under the terms of the 2009-2012 job orders attached as Exs. B-E, as defined by the H-2A regulations, 20 C.F.R. § 655.100(c) and 20 C.F.R. § 655.103(b) (2010), because she had a place of business in the U.S. and a means by which he could be contacted for employment, had the ability to supervise and control the work of Plaintiffs and other similarly-situated workers, and had a valid Federal Employer Identification Number.

29. At all times relevant to this Complaint, Defendants were engaged in the harvesting of Vidalia onions and other produce in Georgia for sale in interstate commerce.

### IV. THE H-2A PROGRAM

30. The H-2A program was created by 8 U.S.C. §1188 and is implemented pursuant to the regulations found at 20 C.F.R. §§ 655.0-655.185 (2010). The H-2A program authorizes the lawful admission of temporary, non-immigrant workers to perform agricultural labor or services

5

of a temporary nature. The H-2A regulations were reorganized and amended effective January 18, 2009. 73 Fed. Reg. 77110 (Dec. 18, 2008). The H-2A regulations were again reorganized and amended effective March 15, 2010. 75 Fed. Reg. 6884 (Feb. 12, 2010).

31. Employers must file a temporary labor certification application with the U.S. DOL's Employment and Training Administration. 20 C.F.R. § 655.101 (2009); 20 C.F.R. § 655.130 (2010). The application has to include a job offer, known as a "job order," that complies with the requirements of 20 C.F.R. § 655.104 (2009) and 20 C.F.R. § 655.122 (2010). The job order contains the terms to be offered to both foreign H-2A workers and domestic workers throughout the United States. *See* 20 C.F.R. § 655.100(a)(1)(i) (2009) and 20 C.F.R. § 655.121(a)(2) (2010).

32. The terms and conditions of the job orders, together with the requirements of 20 C.F.R. part 655, constituted Plaintiffs' employment contracts. 20 C.F.R. § 655.100(c) (2009) and 20 C.F.R. § 655.103(b) (2010) (definition of "work contract").

33. The H-2A employment contracts at issue here incorporate a regulatory definition of employer found at 20 C.F.R. § 655.100(c) (2009) and 20 C.F.R. § 655.103(b) (2010).

34. In order to be approved by the U.S. Department of Labor an employer must provide workers' compensation insurance. 20 C.F.R. § 655.104(e) (2009) and 20 C.F.R. § 655.122(e) (2010).

35. Plaintiffs' and Opt-In Plaintiffs' employment contracts promised to "comply with applicable Federal, State and local law and regulations" including the Fair Labor Standards Act. *See* 20 C.F.R. § 655.105(e)(1) (2009); 20 C.F.R. § 655.135(e)(2010).

36. Plaintiffs' and Opt-In Plaintiffs' employment contracts promised that each worker would earn at least the prevailing rate for the crop activity or at least the AEWR [Adverse Effect

Wage Rate], or the federal or state minimum wage, whichever is higher, for all hours worked in the payroll period. Ex. B at 6 (ETA 790, Item 11, continued); Ex. C at 3 ("More Details About the Pay"); Ex. D at 6 ("#16: More detail about pay"); Ex. E at 8 ("More Details About the Pay").

37. Plaintiffs' and Opt-In Plaintiffs' employment contracts promised to pay the applicable AEWR, which was $9.11 in 2010, $9.12 in 2011 and $9.39 in 2012. 75 Fed. Reg. 7293-94 (2010); 76 Fed. Reg. 11286-87 (Mar. 1, 2011); 76 Fed. Reg. 79711-12 (Dec. 22, 2011).

38. In 2009, the AEWR was a minimum of the upcoming federal minimum wage or the Bureau of Labor Statistics (BLS), Occupational Employment Statistics (OES) survey findings for the occupation, skill level and region. 20 C.F.R. § 655.108(e) (2009).

39. The 2009 employment contract promised to pay the applicable AEWR, and listed $7.25 per hour. Ex. B at 3, ETA 790 at Item No. 11 "Wage Rates, Special Pay Information and Deductions" (showing hourly wage of $7.25 for harvest, clipping, and dumping of onions).

## V. STATEMENT OF FACTS

40. The Hendrix Defendants recruited workers through Defendant Merino for the 2009, 2010, 2011 and 2012 onion harvest seasons.

41. The Hendrix Defendants estimated ahead of time the number of workers they needed each season and through Defendant Merino and other crew leaders obtained the required number of workers.

42. Defendant Merino filed job order number GA 7753664, proposing to employ 100 agricultural workers from April 10, 2009 through July 10, 2009. A copy of this job order is attached as Exhibit B.

43.     The job order application forms and the "Agricultural Work Agreement" that is part of the job order list the name and address of Defendant Hendrix Produce as the worksite location and "place of work of employer." Ex. B at 2 and 11.

44.     Plaintiffs Braulio Hernandez-Hernandez and Sergio Hernandez-Hernandez were employed under the terms of the job order attached as Ex. B.

45.     Defendant Merino filed job order number GA 7835600 proposing to employ 99 agricultural workers from April 28, 2010 to July 10, 2010. A copy of this job order is attached as Exhibit C.

46.     The job order attached as Exhibit C contains a letter signed by Defendant Hendrix on Hendrix Produce's letterhead stating the Hendrix Defendants' intent to employ Defendant Merino and her crew of 99 workers in April and May 2010 to harvest onions. Ex. C at 7.

47.     Plaintiffs Braulio Hernandez-Hernandez and Sergio Hernandez-Hernandez were employed under the terms of the job order attached as Ex. C.

48.     Defendant Merino filed job order number GA7921340, proposing to employ 99 agricultural workers from April 5, 2011 to June 5, 2011. A copy of this job order is attached as Exhibit D.

49.     The job order application forms and the "Agricultural Work Agreement" that is part of the job order list the name and address of Defendant Hendrix Produce as the worksite location and "place of work of employer." Ex. D at 2 and 10.

50.     Plaintiffs Braulio Hernandez-Hernandez, Sergio Hernandez-Hernandez and Alejandro Mateo-Hernandez were employed under the terms of the job order attached as Ex. D.

51. Defendant Merino filed job order number GA8004042 proposing to employ 140 agricultural workers from April 14, 2012 to June 1, 2012. A copy of this job order is attached as Exhibit E.

52. The job order application forms and the "Agricultural Work Agreement" that is part of the job order list the name and address of Defendant Hendrix Produce as the worksite location and address of the employer. Ex. E at 2 and 20.

53. Plaintiffs Braulio Hernandez-Hernandez, Sergio Hernandez-Hernandez, Alejandro Mateo-Hernandez, Francisco Javier Rojo-Hernandez, and Fidencio Hernandez-Hernandez were employed under the terms of the job order attached as Ex. E.

54. The Hendrix Defendants' office and fax machine were used for the H-2A application and H-2A visa and hiring processes.

### Recruitment, Hiring, and Expenses of Plaintiff Workers

55. Defendants through their agents recruited the Plaintiffs and other similarly-situated workers in Mexico with employment offers to harvest produce in Georgia.

56. Defendants subsequently ratified this recruitment by employing the Plaintiffs and other similarly-situated workers to harvest the Hendrix Defendants' crops during the 2009, 2010, 2011 and 2012 seasons.

57. The Plaintiffs and other similarly-situated workers accepted the employment offer by signing up with agents of the Defendants in Mexico.

58. Plaintiffs and other similarly-situated workers incurred various immigration and travel-related expenses in order to come to work for Defendants' operations in Georgia.

59. Plaintiffs and other similarly-situated workers paid, at their own expense, visa and processing fees in excess of $180 in order to obtain the H-2A visa.

60. In order to comply with the Defendants' hiring processes, the Plaintiffs and other similarly-situated workers traveled, at their own expense, from their homes, including in the Mexican states of San Luis Potosi and Guanajuato, to the U.S. Consulate in Monterrey, Nuevo Leon, or Nuevo Laredo, Tamaulipas, Mexico, for the consular interview necessary to obtain an H-2A visa.

61. Plaintiffs' and other similarly-situated workers' travel expenses from their home states to Monterrey exceeded $40.

62. Plaintiffs and other similarly-situated workers incurred expenses for lodging in Monterrey while they completed a visa application form, attended a consular interview, and waited for their visa applications to be processed and for their visas to be issued.

63. Following the issuance of the H-2A visas, Plaintiffs and other similarly-situated workers boarded a bus and paid their own travel expenses from Monterrey, Mexico, or Nuevo Laredo, Mexico, to Defendants' operations in Georgia, which exceeded $120.

64. For each year they participated in a contract, Plaintiffs each paid a $6 fee for the issuance of the Customs and Border Patrol Form I-94 required to enter the U.S.

65. Plaintiffs were required to pay their own subsistence expenses during their journey from their homes in Mexico to Defendants' operations in Georgia.

66. The expenditures set out in paragraphs 58 through 64 were primarily for the benefit of the Defendants within the meaning of 29 C.F.R. §§ 531.32(c) and 778.217.

67. The expenditures set out in paragraphs 58 through 64 were made before receipt of Plaintiffs' first paychecks in each contract period in which they worked.

68. Defendants failed to reimburse Plaintiffs who had not participated in the *Garcia-Mancha* lawsuit and similarly-situated workers during the first workweek for the costs

described in paragraphs 58 through 64, resulting in these workers' first week wages falling well below the minimum wage.

69. Defendants did not reimburse Plaintiffs who had not participated in the *Garcia-Mancha* lawsuit and similarly-situated workers at the 50 percent point of these workers' work period for all inbound transportation to Georgia and subsistence expenses not previously reimbursed as required by their employment contracts.

70. The Plaintiffs and similarly-situated workers were employed by the Hendrix Defendants to harvest onions and other produce for their farming operation—a repetitive, rote task that requires little training.

71. The services performed by Defendant Merino did not require special skills, training or education.

72. Hendrix Defendants directed and controlled the terms and conditions of Plaintiffs' and similarly-situated workers' employment on a daily basis by directing the dates and time of work, directing which fields the Plaintiffs and similarly-situated workers were to harvest, and directing the manner in which Plaintiffs and similarly-situated workers rendered services for Defendants' operations.

73. Hendrix Defendants directed and controlled the terms and conditions of Plaintiffs' and similarly-situated workers' employment by determining the amount of Plaintiffs' and other similarly-situated workers' pay through the payment method and amounts paid to Defendant Merino.

74. Plaintiffs and other similarly-situated workers worked upon farmland and some resided in barracks owned or controlled by the Hendrix Defendants.

75. The Hendrix Defendants undertook responsibilities in relation to the Plaintiffs and other similarly-situated workers that employers commonly perform, including providing tools, equipment, and materials necessary for Plaintiffs' work.

76. A necessary and integral step to Defendants' principal business activity of growing, harvesting, packing and marketing Vidalia sweet onions and other produce was the Plaintiffs' and their co-workers' work harvesting the produce.

77. Plaintiffs and other similarly-situated workers did not receive payment for all compensable hours worked as required by the FLSA and their H-2A employment contract.

78. Plaintiffs and other similarly-situated workers were paid on a piece-rate basis, such that they were paid according to the amount of crops they harvested without regard to the number of hours they worked.

79. In some weeks, Plaintiffs' and other similarly-situated workers' weekly piece-rate earnings fell below the applicable federal minimum wage.

80. In some weeks, Plaintiffs' and other similarly-situated workers' weekly piece-rate earnings fell below the applicable AEWR.

81. Defendants did not supplement Plaintiffs' and other similarly-situated workers' weekly earnings to ensure that Plaintiffs' and other similarly-situated workers' wages met the FLSA minimum hourly wage or the minimum hourly wage set forth in the H-2A employment contracts.

82. Defendants failed to make, keep, preserve, and retain accurate employment records as required by the FLSA, 29 U.S.C. § 211(c), and the H-2A regulations, 20 C.F.R. § 655.104(j) (2009) and 20 C.F.R. § 655.122(k) (2010).

83. Defendants were previously sued for similar violations in *Garcia-Mancha, et al., v. Hendrix Produce, Inc., et al.*, 6:10-CV-36 (S.D. Ga.).

84. Because of the previous litigation in 2010, Defendants knew or showed reckless disregard for their FLSA obligations asserted in the present lawsuit.

## COUNT I

## FAIR LABOR STANDARDS ACT

85. Plaintiffs incorporate each of the allegations contained in paragraphs 1 through 84 above by reference.

86. This Count sets forth a claim by Plaintiffs and others similarly situated for damages for Defendants' violations of the FLSA pursuant to 29 U.S.C. § 216 (b).

87. As detailed in paragraphs 66-68, 77-79 and 81 above, Defendants failed to pay Plaintiffs, and others similarly situated, at least the required average minimum hourly wage for every compensable hour of labor performed in a workweek, as required by 29 U.S.C. § 206(a).

88. The violations of the FLSA resulted, in part, from Defendants' failure to reimburse expenses as detailed in paragraphs 58 through 64 above, which Plaintiffs incurred primarily for the benefit or convenience of Defendants prior to Plaintiffs' first week of work. When these expenses were subtracted from the Plaintiffs' first week's pay, as required by law, Plaintiffs' earnings were near or below zero, and fell well below the required average minimum hourly wage for that pay period as detailed in paragraphs 66-68, above.

89. The violations set forth in this Count resulted, in part, from Defendants' practice of paying Plaintiffs based on the quantity of the produce harvested without regard to the number of hours Plaintiffs worked, as detailed in paragraph 78 above.

90. The violations set forth in this Count also resulted, in part, from Defendants' failure to record and pay Plaintiffs for all hours worked as described in paragraphs 78, and 81 through 82, above.

91. Pursuant to 29 U.S.C. § 216(b), as a result of Defendants' violations of the FLSA set forth in this Count, Plaintiffs and Opt-In Plaintiffs are entitled to recover the amount of their unpaid wages and an equal amount as liquidated damages for each workweek in which they were suffered or permitted to work at Defendants' operations and during which they earned less than the applicable minimum wage.

92. Defendants' violations set out in this Count were willful within the meaning of FLSA.

## COUNT II

## BREACH OF CONTRACT

93. Plaintiffs and Opt-In Plaintiffs incorporate each of the allegations contained in paragraphs 1 through 84 above by reference.

94. This Count sets forth a claim by Plaintiffs and Opt-In Plaintiffs for damages for Defendants' breach of the "rate of pay" provisions of the Plaintiffs' and Opt-In Plaintiffs H 2A employment contracts, as described in paragraphs 36 and 39, above.

95. This Count sets forth Plaintiffs' and Opt-In Plaintiffs' claims for declaratory relief and damages for Defendants' breach of the "Assurances" provision contained in Plaintiffs' and Opt-In Plaintiffs' employment contracts, including the terms set forth in paragraphs 35 and 36 above, which created a contractual promise to pay Plaintiffs and Opt-In Plaintiffs at least the applicable federal minimum wage for each compensable hour of work in a workweek.

96. Defendants, through their agents, offered employment on the terms and conditions set out in the 2009, 2010, 2011, and 2012 job orders as described in paragraphs 32 and 55 through 57 above.

97. Plaintiffs and Opt-In Plaintiffs accepted Defendants' offer.

98. Defendants breached the Plaintiffs' and Opt-In Plaintiffs' H-2A employment contracts by failing to pay the Plaintiffs and Opt-In Plaintiffs the applicable AEWR, as described in paragraphs 77 through 78, and 80 through 81, above.

99. Defendants also breached the Plaintiffs' and Opt-In Plaintiffs' H-2A employment contracts by failing to pay Plaintiffs and Opt-In Plaintiffs at least the applicable federal minimum wage for each compensable hour of work in a workweek, as set forth in paragraphs 77 through 79, and 81 above.

100. Defendants also breach the Plaintiffs' and Opt-In Plaintiffs' H-2A employment contracts by failing to pay Plaintiffs and Opt-In Plaintiffs at the 50 percent point of Plaintiffs' and Opt-In Plaintiffs' work period for all inbound transportation to Georgia and subsistence expenses not previously reimbursed as required by their employment contracts. This claim is not asserted by Plaintiff Alejandro Mateo-Hernandez.

101. As a direct consequence of Defendants' breach of the Plaintiffs' and Opt-In Plaintiffs' H 2A employment contract, Plaintiffs and Opt-In Plaintiffs suffered economic injury.

102. Defendants are liable to Plaintiffs and Opt-In Plaintiffs for the damages that arose naturally and according to the usual course of things from Defendants' breach, as provided by federal common law and/or O.C.G.A. § 13-6-2, including unpaid wages, damages arising from the delay, and prejudgment interest.

## **PRAYERS FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court grant them the following relief:

(a) Under Count I:

    1. Declare that Defendants have willfully violated the FLSA as specified above in paragraphs 83 through 84 and 92 above;

    2. Grant judgment against Defendants and in favor of each Plaintiff and Opt-In Plaintiff in the amount of his respective unpaid wages as proved at trial, plus an equal amount in liquidated damages, pursuant to 29 U.S.C. § 216(b); and

    3. Award Plaintiffs and Opt-In Plaintiffs their attorneys' fees pursuant to 29 U.S.C. § 216(b).

(b) Under Count II:

    1. Declare that Defendants have breached their employment contracts with Plaintiffs and Opt-In Plaintiffs as specified in paragraphs 94 through 102, above;

    2. Grant judgment against Defendants and in favor of each Plaintiff and Opt-In Plaintiff, in the amount of each Plaintiffs' and Opt-In Plaintiffs' damages as arose naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of such breach;

(d) Award Plaintiffs and Opt-In Plaintiffs pre- and post-judgment interest as allowed by law;

(e) Cast all costs upon Defendants; and

(f) Award Plaintiffs and Opt-In Plaintiffs such further relief, at law or in equity, as this Court deems just and proper.

Respectfully submitted this 3rd day of May, 2013,

/s/ Dawson Morton
Dawson Morton

Georgia Bar No. 525985
Lisa J. Krisher
Georgia Bar No. 429762
Georgia Legal Services Program
104 Marietta Street NW, Suite 250
Atlanta, GA  30303
Phone:  (404) 463-1633
Fax:        (404) 463-1623

*Attorneys for Plaintiffs*