IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

SERGIO HERNANDEZ-HERNANDEZ, et al., :
and all others similarly situated, :
  :
      Plaintiffs, :
  :
v. :    CIVIL ACTION NO.  6:13-CV-53
  :
HENDRIX PRODUCE, INC., et al., :
  :
      Defendants. :
  :

**PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER**

Defendants have unilaterally noticed the depositions of 14 Plaintiffs and Opt-In Plaintiffs to begin on December 16, 2013 at half-hour intervals at the offices of Defendants' counsel in Statesboro, Georgia. Ex. A. Plaintiffs seek a protective order that the depositions not go forward as noticed or be had by other means. These deposition notices arise out of a conversation with the Hendrix Defendants' counsel during the parties' Rule 26(f) conference. The Hendrix Defendants' counsel inquired as to whether Plaintiffs would return to the forum for deposition, and Plaintiffs' counsel explained that they were in Mexico, indigent and without visas to return, and so could not return to the forum for deposition. Plaintiffs' counsel also explained that there is an exception in the case of indigent foreign plaintiffs to the general requirement that plaintiffs return to the forum for deposition. Plaintiffs' counsel sent a letter detailing this case law on October 8, 2013. Ex. B. Defendants' counsel made no response to the letter and has provided no case law to the contrary, but noticed the depositions from which Plaintiffs now must seek protection.

1

Plaintiffs do not seek to avoid their discovery obligations, but merely seek accommodation appropriate to their indigence and their limited ability to travel due to their lack of immigration documents to enter the U.S. Since it would be an undue hardship to require Plaintiffs to return to the forum, and could possibly result in Plaintiffs—who lack funds and the immigration status to return—being forced to forfeit their right to seek relief, Plaintiffs move with good cause for a protective order pursuant to Fed. R. Civ. P. 26(c) that these depositions not be had in Statesboro, Georgia.[1] The Plaintiffs propose that the deposition testimony be taken instead where Plaintiffs currently reside, by telephone, or by other means.

Plaintiffs are poor laborers who reside in rural Mexico. *See, e.g.,* Rojo-Hernandez Decl. (Ex. C) at ¶¶1 and 4 (lives in a village near Santa Catarina, Mexico, where he is out of work and last worked assisting a mason for 900 pesos [$69.78] per week);[2] Romero-Garcia Decl. (Ex. D) at ¶¶ 1, 4-5 (from a hamlet in Guanajuato, Mexico, where he works as a construction helper for 1,000 pesos [$77.54] per week and also harvests corn and beans and tends two cows).[3] Besides Alejandro Mateo-Hernandez, whose deposition Defendants have agreed to modify, none of the remaining 13 Plaintiffs or Opt-In Plaintiffs noticed for deposition are in the U.S. and not one has the immigration status to freely return to the U.S.  Rojo-Hernandez Decl. (Ex. C) at ¶¶ 1-3 and

---

[1] Since the depositions were noticed, one opt-in Plaintiff, Alejandro Mateo-Hernandez, has returned to the U.S. and is working on an orange farm in southern Florida. Plaintiffs and Defendants have agreed to work to set his deposition at a mutually convenient time and place within the U.S.

[2] All peso to dollar conversions have been done at the exchange rate of 12.9 Mexican Pesos to 1 U.S. Dollar.

[3] Given the remote location in which most Plaintiffs live, obtaining affidavits from the Plaintiffs is difficult and time consuming.  Plaintiffs have obtained affidavits from eight of the fourteen noticed for deposition. Due to the turnaround times of the translator, not all of the affidavits have yet been translated.  Plaintiffs will supplement this filing with additional translations as they become available. Besides Alejandro Mateo-Hernandez, no other Plaintiffs are in the U.S., nor have a visa to return.

12; Morales-Arcadio Decl. (Ex. E) at ¶¶1 and 7; B. Hernandez-Hernandez Decl. (Ex. F) at ¶¶1 and 10; O. Hernandez-Hernandez Decl. (Ex. G) at ¶¶1 and 8; S. Hernandez-Hernandez Decl. (Ex. H) at ¶¶1 and 10; A. Hernandez-Hernandez (Ex. Q) at ¶¶ 1-2 and 9.

Plaintiffs have temporary and intermittent work in Mexico, and occasionally seasonal work in the U.S., earn little cash income and lack the substantial funds necessary for a trip to Statesboro, Georgia. *See, e.g.,* Romero-Garcia Decl. (Ex. D) at ¶5 (earns 1,000 pesos [$77.52] a week in a temporary job) and at ¶15 (no funds to travel); Rojo-Hernandez Decl. (Ex. C) at ¶4 (currently out of work and last job earned 900 pesos [$69.77] a week) and at ¶10-12 (still in debt and no money for travel to U.S.); Morales-Arcadio Decl. (Ex. E) at ¶3 (annually earns approximately 30,000 pesos [$2,326] a year from farming and occasionally $8 a day from construction work) and at ¶7 (would need a loan to travel to the U.S.); O. Hernandez-Hernandez Decl. (Ex. G) at ¶4 (earns 7,000 to 8,000 pesos [$543 to $620] annually from farmwork with his dad and occasionally 80 pesos [$6.20] a day from farm work with neighbors) and at ¶¶7 (no savings and no money for visa and travel to U.S.); Romero-Cortez Decl. (Ex. P) at ¶ 5 (makes 1000 pesos [$77.52] a week working construction jobs) and at ¶ 9 (still in debt from last trip to U.S.).

Because of the extreme burden and hardship the depositions would cause if they proceed as noticed, and the strong likelihood Plaintiffs and Opt-In Plaintiffs in Mexico would be denied the visas necessary to travel to Georgia, Plaintiffs have made alternative proposals, including conducting the depositions in Mexico or conducting the depositions by telephone. Ex. B at 3 (Ltr. of D. Morton dated Oct. 8, 2013). Defendants could also take the deposition testimony upon written questions pursuant to Fed. R. Civ. P. 31.

**I.     GOOD CAUSE EXISTS TO PROTECT PLAINTIFFS FROM DEPOSITION IN THE FORUM.**

Absent a showing of good cause, there is a presumption that a plaintiff should appear to be deposed in the forum in which he or she filed suit. *Clem v. Allied Lines Int'l Corp.*, 102 F.R.D. 938, 939 (S.D.N.Y. 1984). If a party shows good cause, however, he or she may be protected from appearing for deposition in the forum. *See Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001) (describing a showing of good cause as a prerequisite for issuance of a protective order); *Luna v. Del Monte Fresh Produce (Southeast), Inc.*, 2007 U.S. Dist. LEXIS 36893 at *8 (N.D. Ga. May 18, 2007) ("Rule 26 authorizes the Court to order that a plaintiff's deposition be taken in a different location, or by alternative means, if justice so requires."); *Palma v. Safe Hurricane Shutters, Inc.*, 2009 U.S. Dist. LEXIS 22704, at *11 (S.D. Fla. Mar. 12, 2009) (finding good cause for plaintiffs "not [to] have to attend their depositions in person in this jurisdiction due to undue economic hardship" and ordering depositions by telephone). Good cause may be shown by "specific demonstrations of fact, supported where possible by affidavits and concrete examples[.]" *Deford v. Schmid Prod. Co.*, 120 F.R.D. 648, 653 (D. Md. 1987); *but see Nat'l Utility Serv., Inc., v. Northwestern Steel & Wire Co.*, 426 F.2d 222, 225 (7th Cir. 1970) (allowing good cause to be shown merely by the "motion itself without any accompanying affidavit where the records and pleadings warrant").

To support a motion for a protective order, a plaintiff generally must demonstrate that significant or undue financial hardship would occur if the plaintiff were required to appear. *Palma*, 2009 U.S. Dist. LEXIS 22704, at *11 (granting protective order to avoid subjecting plaintiffs in New York, New Jersey and Chile to "undue expense" to return to Miami); *Luna*, 2007 U.S. Dist. LEXIS 36893 at *8-9; *Abrego v. Seyppel Gin, LLC*, 240 F.R.D. 625, 626 (E.D.

4

Ark. 2007) (granting protective order for migrant workers from Texas finding that "it would be a great hardship for these seven persons to travel to Little Rock to appear for a deposition"); *Normande v. Grippo*, 52 Fed. R. Serv. 3d 182, 2002 U.S. Dist. LEXIS 501 at * 2 (S.D.N.Y. 2002); *Abdullah v. Sheridan Square Press, Inc.*, 154 F.R.D. 591, 593 (S.D.N.Y. 1994). However, courts have found that even foreign professionals who present no evidence of financial hardship, but who would be required to travel from overseas, should not be forced to return for deposition in the forum. *Patrnogic v. United States Steel Corp.*, 43 F.R.D. 402, 403 (S.D.N.Y. 1967) (holding that a law professor should be made available for deposition in the week before trial instead of being forced to make a separate, earlier trip to the forum); *Scotch Whiskey Assoc. v. Majestic Distilling Co.*, 14 Fed. R. Serv. 3d 940, 1988 U.S. Dist. LEXIS 16531 at *12 (D. Md. 1988) (protecting representatives of Scotch Whiskey distillers from deposition in the U.S. because with multiple depositions "this approach [foreign depositions where there are many deponents] provides for the least costly arrangement for the depositions to be taken, thereby protecting foreign litigants against unnecessary or unduly burdensome discovery."); *Huynh v. Werke*, 90 F.R.D. 447, 449 (S.D.Ohio 1981) (requiring depositions of the employees of defendant, a German corporation, "be conducted at Desma's place of business in West Germany").

In determining whether financial hardship creates good cause, courts use a balancing test, weighing the defendant's right to a deposition in the forum against the plaintiff's hardship in appearing. *Luna*, 2007 U.S. Dist. LEXIS 36893 at *8 ("if a plaintiff demonstrates hardship or burden that outweighs any prejudice to the defendant, the general rule requiring a plaintiff to appear for deposition in the forum may yield to the exigencies of the particular case") (citations omitted); *Normande*, 52 Fed. R. Serv. 3d at 183 (commenting that "courts must strive to achieve

5

a balance between claims of prejudice and those of hardship, always guided by the proposition that the Federal Rules of Civil Procedure 'shall be administered to secure the just, speedy and inexpensive determination of every action'"); *Hyam v. American Export Lines, Inc.*, 213 F.2d 221, 222 (2d Cir.1954) (holding that the preference of a defendant for deposition of the plaintiff in the forum "must be weighed both against his actual, as distinguished from his supposed, need for oral examination at the forum and against the resulting burden to his opponent.").

That balancing test produces an obvious result where the Plaintiffs are indigent Mexican laborers and the Defendants operate an interstate agricultural business with $2.5 million in sales. *Compare* Decl. of M. Juarez-Briceno (Ex. I) at ¶ 3 (the highest paid plaintiff earning approximately $96.90 per week [1,250 pesos]) *with* Dun & Bradstreet Company Information (Ex. J) (showing Hendrix Produce has annual sales of $2.5 million, on which a 20% profit margin would provide $500,000 in annual income). It is clear that Plaintiffs' depositions should occur near Plaintiffs in Mexico, not in Statesboro, Georgia, as Plaintiffs cannot afford to return to the forum, lack the immigration status to enter the U.S., and had no choice but to file in this U.S. forum.

> A. The Plaintiffs Are Financially Unable to Return to the Forum and Do Not Have Immigration Status That Permits Entry Into the United States.

District courts have held that if a plaintiff "truly lacks the funds to travel to [the forum], the interests of justice would not be served by ordering him to do so, since it would force him to forfeit his day in court." *Ortiz v. Summit II, Inc.*, 1993 U.S. Dist. LEXIS 985 at *3 (S.D.N.Y. Jan. 29, 1993); *De Petro v. Exxon, Inc.*, 118 F.R.D. 523, 524 (M.D. Ala. 1988); *Forde v. Urania Transp. Inc.*, 168 F. Supp. 240, 241 (S.D.N.Y. 1958). Courts have granted protective orders for indigent plaintiffs within the U.S. who cannot afford to travel from one state to another for

deposition. *Abrego*, 240 F.R.D. at 626-27; *Palma*, 2009 U.S. Dist. LEXIS 22704 at *12. To require an indigent plaintiff to travel from a foreign country for deposition has been held to be reversible error. *Hyam*, 213 F.2d 221.

Defendants' counsel have refused Plaintiffs' offers to be available for deposition in Mexico or by alternative means such as by phone and instead noticed Plaintiffs to appear for deposition in Statesboro. For those Plaintiffs and Opt-In Plaintiffs who are currently at their homes in Mexico, the cost would be over $1,200 per person, not counting the additional subsistence expense of food, merely to attend a deposition. Round trip travel from Laredo, Texas, the U.S. city with an airport closest to the Plaintiffs' home villages, to Savannah costs $638 per person. *See* Orbitz printout (Ex. K).  In addition, each Plaintiff would have to pay the cost of bus travel from their villages to the U.S. border, approximately $140-160 per person round trip.  Hotel lodging near Statesboro, Georgia, for three nights[4] at approximately $75 per night comes to $112 per person, assuming that the Plaintiffs would share rooms. The immigration travel documents for which Plaintiffs traveling from Mexico would have to apply, if granted, have an application fee of $360 per person. *See* Ex. L at 11 (I-131 "Application for Travel Document" from U.S. Citizenship and Immigration Services fee schedule, *available* at http://www.uscis.gov/sites/default/files/files/form/i-131instr.pdf).[5] Plaintiffs without a valid passport would have to spend at least another $35 to renew their passport. Ex. M (showing one year passports available at a cost of 460 pesos [$35.67] in cases of emergency, available at: http://www.sre.gob.mx/index.php/pago-de-derechos-de-pasaporte).

---

[4]  Assumes three nights per Plaintiff or Opt-In Plaintiff to account for travel schedules and arriving early to prepare for their deposition with Counsel.

[5] The application for humanitarian parole is available at: http://www.uscis.gov/files/form/I-131.pdf

This total sum of more than $1,200 represents a large portion of Plaintiffs' yearly income, particularly those who have seasonal work and irregular earnings. Plaintiff Sergio Hernandez-Hernandez, for example, works as a day laborer harvesting coffee for 70 pesos [$5.40] per day. Ex. H at ¶ 5. Assuming he works six days per week for the four month coffee season, an unlikely assumption given that work in his village is in short supply and he states that he is without work many days, his seasonal income would be $520– he simply cannot afford such substantial travel costs even if he is able to make an extra 70 pesos [$5.40] per day in the off season selling bales of fire wood.[6]  Ex. H at ¶¶ 5-6.  In total, the aggregate cost would be $15,500 for the thirteen deponents in Mexico to return for depositions as noticed by Defendants in Statesboro.

---

[6] Calculating Plaintiffs' annual income is complicated by the irregularity of their work, but even assuming that Plaintiffs obtain the maximum amount of work possible (likely an inaccurate assumption), Plaintiffs have, for example, the following annual incomes. Francisco Javier Rojo-Hernandez is currently unemployed and earlier in 2013 worked as an assistant to a brick mason, earning 900 pesos [$69.77] per week. F. Rojo-Hernandez (Ex. C) at ¶ 4. Because masonry work is not always available, he has worked for a short time on a friend's farm, earning between 300 and 600 pesos [$25.26 - $46.51] per week. Ex. C at ¶ 4. Assuming that he were to be hired again as a brick mason assistant, and further assuming 12 months of uninterrupted work, he could earn a maximum of 43,200 pesos [$3,348] per year. Alejandro Romero-Garcia also works in construction, earning 1,000 pesos [$77.50] per week. Romero-Garcia (Ex. D) at ¶ 5. He expects the job to end soon, but assuming that Romero-Garcia is able to continue with his current work for 12 consecutive months, he could earn a maximum of 52,000 pesos [$4,031.01] per year. Clemente Morales-Arcadio works on his own land, planting and harvesting coffee and oranges, and earns at most 30,000 pesos [$2,325.58] per year from the sale of his crops, before accounting for his expenses. C. Morales-Arcadio (Ex. E), at ¶ 4. Apart from his own land, he occasionally earns 100 pesos [$7.75] per day working in construction, but the work is very scarce. *Id*. at ¶ 5. Braulio Hernandez-Hernandez last worked in construction for about one month, earning 100 pesos [$7.75] per day, six days per week [$46.51 per week]. B. Hernandez-Hernandez (Ex. F) at ¶ 6. Although he is currently unemployed, if he were to work the previous job for 12 straight months, he could earn a maximum of 31,200 pesos [$ 2,418.60] per year. Octavio Hernandez-Hernandez works with his father on the family land, growing coffee and palm fronds. O. Hernandez-Hernandez (Ex. G) at ¶ 4. After calculating his portion of the profits from annual coffee and palm leaf sales, he earns at most 8,000 pesos [$620.16] per year. Martin Juarez-Briceno works as a dispatcher for the local Mexican equivalent of 911, where he earns roughly 1,250 pesos [$96.90] per week. M. Juarez-Briceno (Ex. I), at ¶ 3. Over a twelve month period, Juarez-Briceno will earn 65,000 pesos [$5,038.80]. Juan Pablo Romero-Cortez currently works

In addition to the limitations their indigence places on their ability to travel to the forum, the ability of the thirteen Plaintiffs who are in Mexico to come to the U.S. at all is severely limited due to their immigration status. No Plaintiff in Mexico presently has any immigration status to enter the U.S. Rojo-Hernandez (Ex. C) at ¶ 12; Morales-Arcadio Decl. (Ex. E) at ¶ 7; B. Hernandez-Hernandez Decl. (Ex. F) at ¶ 10; O. Hernandez-Hernandez Decl. (Ex. G) at ¶ 8; S. Hernandez-Hernandez Decl. (Ex. H) at ¶ 10; Juarez-Briceno (Ex. I) at ¶ 8. Although Plaintiffs previously worked in the U.S. legally under the terms of H-2A guestworker visas, obtained by Defendants, those visas have now expired, and Plaintiffs' indigence makes it unlikely that they would be granted a tourist visa or other temporary permission to enter the U.S.  *See* U.S. Consulate in Mexico website (available at http://monterrey.usconsulate.gov/niv_documents.html) ("United States law requires that every visa applicant demonstrate 'that it is reasonable to suppose that you will return to your place of origin once you have completed your trip.'  In order to comply with this requirement, it is suggested that you bring with you original documents that support your claim of economic solvency."). As the Consulate's website explains, Plaintiffs' indigence effectively precludes them from obtaining a tourist visa because, without sufficient assets, they cannot show the substantial ties to their home country required to support the assumption that they would not remain permanently in the U.S. *Luna*, 2007 U.S. Dist. LEXIS 36893 at *9 ("Because plaintiffs are poor, it is unlikely that they will be granted a tourist visa or other temporary permission to enter the United States."). Plaintiffs' remaining option for legal entry into the United States,

---

in construction building a house, earning 1,000 pesos [$77.50] per week. Romero-Cortez (Ex. P) at ¶ 5. Assuming that he obtains similar work every week, he could make 52,000 pesos [$4,031.01] a year. Opt-in Plaintiff Antonio Hernandez-Hernandez works harvesting corn and makes 100 pesos ($7.75) a day, three to four days a week, although sometimes he is paid in corn. Ex. Q at ¶ 3.  Even if this work lasted year around, it would only yield annual income of $1,612.

humanitarian parole, is " used sparingly to bring someone who is otherwise inadmissible into the United States for a temporary period of time due to a compelling emergency." *See* Ex. N (U.S. Custom & Immigration Services website);[7] *Luna*, 2007 U.S. Dist. LEXIS 36893 at *9 ("humanitarian visas, which are issued sparingly, are not generally granted for purposes of providing deposition testimony"); 8 U.S.C. § 1182(d)(5)(A) (humanitarian parole is available "on-a-case-by-case basis for urgent humanitarian reasons or significant public benefit"). Thus, even apart from the obstacle of cost, Plaintiffs' ability to enter the United States at all for deposition is unlikely. Where both costs and immigration laws restrict a plaintiff's entry into the forum, the deposition should occur where the plaintiff resides. *Luna*, 2007 U.S. Dist. LEXIS 36893 at *9; *Abdullah*, 154 F.R.D. at 593.

   B.   Plaintiffs Had Little Choice of Forum.

Plaintiffs' need for a protective order is further justified because they had little choice of the forum in which to file the present lawsuit. Plaintiffs were recruited in their home villages in Mexico by Defendants' agents to work for Defendants, farm labor contractor Yesenia Merino, Hendrix Produce, and its owner R.E. Hendrix, on the Hendrix farm outside of Metter, Georgia. Doc. 1 (Compl.) at ¶¶55-57. After being recruited, Plaintiffs traveled to Monterrey, Mexico and Nuevo Laredo, Mexico to obtain their work visas and then traveled to Defendants' operations in the U.S. *Id.* at ¶ 60. Because Plaintiffs were recruited in Mexico by a Georgia resident labor contractor and a Georgia company and its Georgia farmer, they brought suit in the U.S. forum available to them, Georgia.

Where Plaintiffs had no choice of jurisdiction, it is unfair and inappropriate to expect them to return to the forum despite their inability to do so.

---

[7] Available at http://www.uscis.gov/humanitarian/humanitarian-parole.

> Plaintiff apparently had no choice of forum. There is no showing that he could have obtained jurisdiction over defendants elsewhere or pursued his remedy against them anywhere other than in this district where they resided and did business. Unless he brought suit against them here he may well have been without remedy for the egregious wrongs which he claims were committed against him.

*Endte v. Hermes Export Corp.*, 20 F.R.D. 162, 164 (S.D.N.Y. 1957); *Connell v. City of New York*, 230 F. Supp. 2d 432, 437 (S.D.N.Y. 2002) (refusing to require indigent plaintiff to return to forum for deposition because "plaintiff had no choice but to bring suit in the Southern District of New York as his claims involve the New York City Police Department.").[8] Commentators have also noted that in cases, as here, where foreign plaintiffs must choose a distant forum, it is inappropriate to require them to return to the forum for deposition:

> If plaintiff has sued in a court far distant from home because the transactions in question occurred in that district, and a suit elsewhere would probably have been transferred in any event, the usual rule requiring plaintiff to come to the forum for his or her deposition seems inappropriate.

8A Wright & Miller, *Federal Practice and Procedure* § 2112 (3rd ed. 2010).

After recruiting migrant workers in Mexico and importing them to labor in the U.S., Defendants cannot be heard to complain that they must now take Plaintiffs' depositions where they recruited the migrant workers. Defendants' actions here, seeking to force indigent foreign migrant laborers to return to the forum, are an attempt to condition Plaintiffs' access to this tribunal on their immigration status and their ability to pay the costs to return. That conditioning of access to federal courts on a plaintiff's immigration and financial status is wrong. This Court should deny Defendants' attempt to exploit Plaintiffs' indigence and immigration status to their

---

[8] In particular, where itinerant workers are suing their corporate employers, courts have been loathe to require the workers to return to the forum and have ordered defendants to pay the cost of returning even a United States worker to the forum for deposition. *Lawson v. Mathiasens' Tanker Industries, Inc.*, 21 F.R.D. 314, 315 (E.D. Pa. 1957); *see also Abrego*, 240 F.R.D. at 626.

11

advantage. The Supreme Court has explicitly warned trial courts against just the type of tactic employed by Defendants here:

> American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position. . . . the additional cost of transportation of documents or witnesses to or from foreign locations may increase the danger that discovery may be sought for the improper purpose of motivating settlement, rather than finding relevant and probative evidence. Objections to "abusive" discovery that foreign litigants advance should therefore receive the most careful consideration.

*Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for Southern Dist. of Iowa*, 482 U.S. 522, 546 (1987).

    C.    <u>Defendants Have Not Shown Need for Oral Depositions in the Forum and Have Not Attempted to Obtain Discovery by Less Burdensome Means than Requiring Plaintiffs to Journey to the Forum</u>.

Defense counsel's unexplained preference for oral depositions in the forum, as opposed to other means of discovery or deposition in Mexico, is not sufficient to permit those depositions to proceed. Plaintiffs' counsel has offered alternative means of securing the Plaintiffs' testimony: depositions in Mexico or depositions by phone. *Duran v. M.R.R. Land Equity, Inc.*, 112 F.R.D. 648 (M.D. Fla. 1986) (ordering that depositions of Plaintiffs be taken either the week before trial, by telephone, or "in person in the Middle District of Florida at the Defendants' expense"). Depositions upon written questions pursuant to Fed. R. Civ. P. 31 are also an option. *De Petro*, 118 F.R.D. at 524 (noting that "if an oral deposition would be too expensive or too inconvenient for a party then the court in its discretion may order that written questions be used.") Defendants have rejected these options, and have provided no explanation for their refusal to consider alternative deposition arrangements, nor even any case law in support of their position.

Courts have recognized the pragmatic benefits of sending one lawyer to a foreign country rather than bringing many foreign litigants to the forum. *See Scotch Whiskey Assoc.*, 1988 U.S. Dist. LEXIS 16531 at *12 (noting that holding depositions in a foreign country where there are many foreign deponents "provides for the least costly arrangement for the depositions to be taken, thereby protecting foreign litigants against unnecessary or unduly burdensome discovery"); *Huynh*, 90 F.R.D. at 449 (ordering depositions of defendants in Germany because there will be "less total cost to have plaintiffs' counsel go there (as opposed to having eight deponents come here)"); *Harris Corp. v. Amperex Elec. Corp.*, 1987 U.S. Dist. LEXIS 14108 at *6 (N.D. Ill. May 8, 1987) ("In short, taking the depositions of plaintiff in Quincy, would be much more economical, in terms of money, and efficient, in terms of time, than requiring many employees to travel to Chicago for the convenience of defendant's counsel."). Even without any of the concern of indigence or financial hardships that exist here, courts have considered the costs of travel to a distant forum for deposition so substantial that they have required corporate defendants to share the cost of doing so. *Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625, 630 (C.D. Cal. 2005).

In this case, rather than require thirteen indigent Plaintiffs to journey to Statesboro, it is far more efficient for Defendants' counsel to fly to Mexico, which counsel can freely enter without any immigration concerns. All Plaintiffs live relatively near a city with an airport, high-speed internet access, and appropriate hotel or meeting room facilities for conducting depositions. In contrast to the more than $15,000 required to hold the Plaintiffs' depositions in the forum, the cost for Defendants' attorney to travel from Atlanta to Leon, Mexico or Mexico City for depositions would be approximately $504 in airfare, plus $50 per night for six nights'

13

hotel stay, producing a total of approximately $804.[9] *See* Kayak printouts (Ex. O). It would therefore be more economical and convenient for counsel, let alone much more equitable and just, to require a corporation that was involved in recruiting Mexican nationals for work in the U.S. to pay the costs of travel to Mexico, than for the indigent Plaintiffs to attempt to obtain immigration status and borrow the funds to travel to the forum.

There are at least two other alternatives to requiring the Plaintiffs to appear in the forum. First, telephonic depositions are low-cost solutions that are steadily gaining popularity as a means of efficiently deposing foreign plaintiffs. *Mikola v. Penn Lyon Homes, Inc.*, 2007 U.S. Dist. LEXIS 96973 at *5 (M.D. Pa. May 13, 2007) (quashing deposition notice and noting that parties were "free to depose plaintiff by telephone, which would require neither party to travel"); *Estate of Harvey v. Roanoke City Sheriff's Office*, 2007 U.S. Dist. LEXIS 71511 at *8 (W.D. Va. Sept. 26, 2007) (ordering that interstate deposition proceed by video conference due to indigence of plaintiff); *Normande v. Grippo*, 52 Fed. R. Serv. 3d 182, 2002 U.S. Dist. LEXIS 501 at * 4-6 (S.D.N.Y. 2002); *Advani Enters. v. Underwriters at Lloyds*, 48 Fed. R. Serv. 3d 897, 2000 U.S. Dist. LEXIS 15421 at *4 (S.D.N.Y. 2000) (noting that "telephonic depositions are broadly permitted both in this jurisdiction and others."); *Rehau, Inc. v. Colortech, Inc.*, 145 F.R.D. 444 (W.D. Mich. 1993); *Duran v. M.R.R. Land Equity, Inc.*, 112 F.R.D. 648 (M.D. Fla. 1986). For a party to insist on a face-to-face deposition "is especially unreasonable and unduly expensive in light of the fact that the advantages of it over a telephone deposition in a relatively straightforward case like the one at bar are slight at best." *De Petro*, 118 F.R.D. 524-525.

---

[9] If Defense counsel can complete all of the depositions in one day, as noticed, the cost of the hotel stay would be greatly reduced.

Second, courts have allowed distant indigent plaintiffs to be deposed during the week prior to trial, when they are already present in the forum, rather than requiring them to return twice to the forum.  *Abrego*, 240 F.R.D. at 627; *De Petro*, 118 F.R.D. at 525 (noting that court previously denied this motion to compel deposition on the ground that it would be unreasonable and unduly burdensome to compel DePetro to come to Montgomery, because she only had funds to make the trip to Alabama for trial and lacked the financial resources to make an additional trip here for the taking of her oral deposition and because defendants could achieve effective pre-trial discovery by taking DePetro's deposition by telephone or through written interrogatories); *Patrnogic*, 43 F.R.D. at 403; *Lawson*, 21 F.R.D. at 315. In the case at bar, any Plaintiffs who are able to return to the forum for trial can certainly be made available for deposition in the days prior to trial.

Lastly, courts have also found that depositions upon written questions, another option provided by the federal rules, are an appropriate substitute for oral depositions in the forum where plaintiffs' appearance in the forum would be highly burdensome.  *See Fisser v. International Bank*, 20 F.R.D. 419, 420  (S.D.N.Y. 1957) (noting that "Defendants "ha[ve] not shown that the necessary testimony cannot be secured by written interrogatories."); *Endte v. Hermes Export Corp.*, 20 F.R.D. 162, 163-164 (S.D.N.Y. 1957) ("Where special circumstances or under hardship are shown to exist defendant may be required to examine plaintiff outside the forum, and this may be by written interrogatories if they are suitable and appropriate for purposes of eliciting the information to which defendant is entitled.").

## CONCLUSION

In the end, this Court must balance Defendants' unexplained preference for oral depositions in the forum against the significant hardship, difficulties, and burden that such

depositions would impose on Plaintiffs. Of course, travel to Mexico would be a burden for Defendants. In comparing the relative burdens, however, it is clear that Defendants seek to impose a far greater burden on Plaintiffs than Plaintiffs would have this Court impose upon Defendants.

For these reasons, Plaintiffs request that the Court enter a protective order to prevent the undue burden and expense Plaintiffs would incur in traveling to Statesboro, Georgia for their depositions. Plaintiffs ask for one of the following alternative forms of relief: (1) that the discovery not be had as noticed in Georgia, Fed. R. Civ. P. 26(c)(1); (2) that the depositions be had in Mexico, a location accessible to Plaintiffs, Fed. R. Civ. P. 26(c)(2), or in a city near where the Plaintiffs are currently working in the U.S.; or (3) that the Defendants' discovery be had by other means, such as by deposition upon written questions, telephonic depositions, or depositions conducted in the forum during the week prior to trial, Fed. R. Civ. P. 26(c)(3).

Respectfully submitted this 15th day of December, 2013,

                                          s/ Dawson Morton
                                          Dawson Morton
Georgia Bar No. 525985
dmorton@glsp.org
Leah Lotto
Georgia Bar No. 940599
llotto@glsp.org
Georgia Legal Services Program
104 Marietta Street, NW, Suite 250
Atlanta, GA  30303
Phone:  (404) 463-1633
Fax:  (404) 463-1623

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have on this 15th day of December, 2013, filed electronically with the Clerk of the Court the foregoing PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER, and all attachments. The Court, using the CM/ECF system, will send notification of such filing to the following:

Laura H. Wheaton
Brown Rountree P.C.
26 North Main Street
Statesboro, GA  30458
Phone:  (912) 489-6900
laura@br-firm.com
*Counsel for Defendants Hendrix Produce, Inc. and Raymon Earl Hendrix*

Raymond Perez
Wimberly, Lawson, Steckel, Schneider & Stine, P.C.
Suite 400, Lenox Towers
3400 Peachtree Road, N.E.
Atlanta, GA  30326
Phone:  (404) 365-0900
rp@wimlaw.com
*Counsel for Defendant Yesenia Merino*

                s/ Dawson Morton
                Counsel for Plaintiffs